Steve A. HEWITT, Plaintiff,

v.

THRIFT SAVING PLAN and Federal Employees Group Life Insurance Program, Defendants.

C.A. No. 2:08–2059–PMD.

United States District Court, D. South Carolina, Charleston Division.

Feb. 4, 2009.

John Christopher Lanning, Brush Law Firm, Charleston, SC, for Plaintiff.

John H. Douglas, U.S. Attorneys Office, Charleston, SC, James Derrick Quattlebaum, Joel M. Bondurant, Jr., Haynsworth Sinkler Boyd, Greenville, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on separate Motions for Summary Judgment filed by Defendant Federal Retirement Thrift Investment Board ("FRTIB") (misidentified by Plaintiff in Complaint and in the caption of this matter as "Thrift Savings Plan") and Defendant Metropolitan Life Insurance Company ("MetLife") (misidentified by Plaintiff in Complaint and in the caption of this matter as "Federal Employees Group Life Insurance Program"). For the foregoing reasons, Defendants' Motions for Summary Judgment are granted.

## BACKGROUND

Gairey Woolum ("Decedent") worked as an army recruiter for the Department of the Army stationed in Ohio. While employed by the Army, Decedent was eligible for the Thrift Savings Plan, a retirement plan for certain federal government employees that was designed to allow government employees savings-related benefits very similar to those enjoyed by private sector employees whose employers offer them 401(k) retirement plans.

He also participated in the Federal Employees' Group Life Insurance Plan ("FEGLI"). This was a life insurance plan which provided life insurance benefits for eligible government employees. On January 7, 2000, Decedent signed a Designation of Beneficiary Form naming Helen Ann Woolum as the beneficiary of all his FEGLI benefits.

On December 12, 2006, Plaintiff Steve A. Hewitt ("Plaintiff"), Decedent's grandson, alleges that Decedent signed Designation of Beneficiary forms for both his FRTIB and FEGLI benefits making Plaintiff his sole beneficiary under both plans. Plaintiff further alleges that both of these beneficiary forms were attested to and signed by two disinterested witnesses on that date. Plaintiff alleges that Decedent mailed him copies of both of these forms, and attached to these forms a handwritten note informing Plaintiff that he wished to make Plaintiff his sole beneficiary under both of these plans.

On October 15, 2007, Decedent passed away. Not having been contacted by anyone from the government regarding either set of Decedent's benefits, Plaintiff contacted the FRTIB's call center regarding Decedent's FRTIB benefits, and informed them that he was the Decedent's grandson and requested information regarding Decedent's FRTIB account. He was told that in order to get that information, he would have to first submit a form requesting information along with a copy of the Decedent's death certificate. Later that day, Plaintiff submitted the proper form, and noted in a blank box marked "Additional information" that he "has 100% beneficiary status according to designation of beneficiary form (attached.)," via fax. He also submitted a copy of Form TSP–3, which was the form on which Decedent allegedly attempted to leave Plaintiff all of his FRTIB benefits.

Plaintiff also filed a Claim for Death Benefits with MetLife, who had, pursuant

an agreement with the government, been administering Decedent's FEGLI account. Plaintiff provided MetLife with a copy of the Designation of Beneficiary Form that Decedent had mailed him in support of his claim.

However, both MetLife and the FRTIB claim that Decedent never actually submitted the documents himself, and that they did not receive these documents or even learn of their existence until after Decedent had passed away, when Plaintiff submitted them in support of his claim to be the sole beneficiary of both sets of benefits. Both Defendants claim that since the forms were not validly submitted and were not received before Decedent passed away, the rightful beneficiaries of Decedent's benefits under the plans were his children.[1] Accordingly, both Defendants disbursed all due benefits to Decedent's three children, Ms. Robin Hewitt, Mr. David Woolum, and Mr. Gairey Woolum.

Plaintiff filed this suit in the Charleston County Court of Common Pleas on April 10, 2008. On May 30, Defendants removed this action to this Court. On July 15, Defendant FRTIB filed a Motion for Summary Judgment. On August 21, Defendant MetLife filed a Motion for Summary Judgment. On August 22, Plaintiff filed a Response in Opposition to FRTIB's Motion, to which FRTIB filed a Reply on September 9. On September 8, Plaintiff filed a Response in Opposition to MetLife's Motion, to which MetLife filed a Reply on September 15.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### ANALYSIS

While the underlying facts of Plaintiff's claims against both FRTIB and MetLife are very similar, the rules and regulations governing the conduct of the two Defendants are distinct. Therefore, the Court must consider these as two separate and distinct claims for summary judgment.

### I. Plaintiff's Claim against FRTIB

FRTIB is an agency in the executive branch of the United States Government which is responsible for administering the Thrift Savings Plan, for which Decedent was eligible. Decedent had made contributions into his TSP, and thus had accrued substantial benefits. In the event of a TSP members' death, FRTIB procedure is to disburse all accrued funds to the dece-

---

1. Decedent's wife would have been the rightful beneficiary under both plans, but she had predeceased him, so both Defendants determined that in the absence of any other explicit instructions to disburse his benefits to any other parties, the benefits must be disbursed to his children.

dent's chosen beneficiary. 5 U.S.C. § 8433. If decedent has not chosen a beneficiary, or if the chosen beneficiary has predeceased the decedent, FRTIB follows statutory rules to determine the beneficiary or beneficiaries of the decedent's TSP. 5 U.S.C. § 8424(d). In this case, since FRTIB claims it had no election of beneficiary form, § 8424(d) dictated that Decedent's three children were the proper beneficiaries of his benefits, and each of his children received one-third of their father's TSP death benefits.

FRTIB's Executive Director has issued a regulation governing the proper procedure for electing a beneficiary for one's TSP benefits. According to this regulation, "[t]o designate a beneficiary of a TSP account, a participant must complete and file a TSP designation of beneficiary form with the TSP record keeper." 5 C.F.R. § 1651.3. The regulation goes on to require that in order to be valid, an election of beneficiary must be "[r]eceived by the TSP record keeper on or before the date of the participant's death" and "[s]igned by the participant and two witnesses." *Id.* The regulation also explicitly notes that "[a] participant cannot use a will to designate a TSP beneficiary." *Id.*

The Court will first address Plaintiff's contention that this Court lacks jurisdiction to decide Defendants' Motions because this place properly belongs in state probate court, and therefore is subject to the probate exception to federal jurisdiction. "The law is well settled that federal courts have no jurisdiction over matters within the *exclusive* jurisdiction of state probate courts." *Foster v. Carlin,* 200 F.2d 943, 947 (4th Cir.1952) (emphasis added). The Supreme Court of the United States has held that a federal court has no jurisdiction to probate a will or administer an estate. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

As an initial matter, the Court notes that Plaintiff's own activity in pursuing this suit is fatal to his claim that this case presents an exception to federal jurisdiction. Plaintiff himself clearly did not view this as a case which was "within the exclusive jurisdiction of [South Carolina] probate court," since he actually filed the Complaint in the Charleston County Court of Common Pleas, not in the county probate court.

Furthermore, the distribution of TSP benefits is an area over which federal law preempts state law, and South Carolina probate courts would therefore not have exclusive jurisdiction over his claim. As previously noted, 5 C.F.R. § 1651.3 explicitly provides that the only method for designating or changing the beneficiary for TSP benefits is by filling out Form TSP–3, which in turn explicitly instructs those filling it out that in order to be valid, it must be mailed to the TSP record keeper.[2] If no TSP–3 form is received before the dece-

---

**2.** The Form in question could not be more explicit about this fact. The Form states at the very top of the first page in bold typeface, "Do not give your completed Form TSP–3 to your employing agency. In order for your form to be valid, this form must be received by the TSP record keeper. If your agency mishandles the transmittal of this form, and this form is not received by the TSP record keeper on or before your date of death, it is invalid." At the top of the second page, the Form states:

You **must mail** the original to:

Thrift Savings Plan
P.O. Box 385021
Birmingham, AL 35238

The form goes to state, once again:

To name beneficiaries to receive your civilian TSP account after you die, you must complete this form, and it must be received by the TSP (not your agency) **on or before** the date of your death. **Only** Form TSP–3 is valid for designating a beneficiary to your civilian TSP account; a will is not valid for the disposition of a TSP account. (Form TSP–3.)

dent passes away, 5 U.S.C. § 8424(d) mandates that all TSP benefits be disbursed to the spouse; in the event there is no living spouse, 5 U.S.C. § 8424(d) mandates that all TSP benefits be disbursed in equal shares to the children, which they were in this case. Section 8424(d) also notes that "a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect [on the disbursement of TSP benefits]." This point is reiterated by 5 C.F.R. § 1651.3, which says that "[a] participant cannot use a will to designate a TSP beneficiary."

■ The federal doctrine of preemption applies when the application of a state law would threaten to destabilize an area of federal interest. The area of federal employees' benefits is clearly one such area. The laws and regulations in question are unequivocal in that they prescribe the only way to elect or change a beneficiary for TSP benefits, and explicitly note that a federal employee cannot use any sort of will, holographic or otherwise, to assign TSP benefits. The reasons for this are quite clear—if, as Plaintiff urges, the law allowed federal employees to alter the beneficiaries of their TSP benefits according to state law procedures, FRTIB employees would have to be familiar with the law of all 50 states. Furthermore, each time a TSP participant passed away, FRTIB employees would have to perform an excessive amount of inefficient diligence simply to discover whether or not the decedent had elected or changed the beneficiary, which would also substantially delay the disbursement of those benefits. Such a regime would also require an excessive amount of legal bickering over which state's law was controlling and what to do when someone's will and TSP–3 form conflict.

There is ample support in caselaw for the notion that the distribution of federal benefits upon the death of a decedent is exclusively governed by federal, not state, law. The Supreme Court of the United States has held that when a soldier formally designated his parents as beneficiaries under the procedures laid out by the policy, his estranged spouse had no right to claim the benefits, even though such benefits ordinarily would have been community property under state law. *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950). The Court explicitly wrote that state law cannot apply in areas where such state law "frustrates the deliberate purpose of Congress." *Id.* at 659, 70 S.Ct. 398. In a case involving a federal statute which explicitly governed a decedent's benefits under the Railroad Retirement Act ("RRA"), the Supreme Court rejected the decedent's spouses claim for a portion of the benefits under state community property laws, saying that the RRA's provisions were designed to "prevent[ ] the vagaries of state law from disrupting the national scheme, and guarantee[ ] a national uniformity that enhances the effectiveness of congressional policy." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). This is true "irrespective of the equities of a particular case." *Hightower v. Kirksey*, 157 F.3d 528, 531 (7th Cir.1998). The only other district court to consider the issue has ruled that § 8424(d) preempts any claim to the decedent's property under state law. *Faris v. Long*, 2008 WL 612938 (E.D.Tenn. Mar.4, 2008).

■ Accordingly, the Court rules that the disbursement of Decedent's TSP benefits was governed exclusively by federal law, and therefore not subject to the probate exception to federal jurisdiction. Therefore, this Court has the power to decide substantive issues of law related to this case, and Defendant FRTIB's Motion for Summary Judgment will not be denied on these grounds.

■ The Court now addresses the substance of Defendant FRTIB's Motion. Defendant asserts that Plaintiff has not established any issue of material fact regarding its claim. Since any claim that the form in question, even if not validly submitted, constituted a valid holographic will is preempted by federal law and therefore fails as a matter of law, the only way Plaintiff can establish a valid cause of action is to establish an issue of material fact as to whether or not Decedent did, in fact, submit the required forms in accordance with federal law.

Plaintiff makes two separate allegations that he asserts establish an issue of material fact to his claim against FRTIB. First, Plaintiff alleges that Decedent did, in fact, fill out and sign the Designation of Beneficiary Form, and had it witnessed and signed by two disinterested individuals. However, as stated above, the issue in this case is not whether Decedent completed the Designation of Beneficiary Form, or even whether Decedent intended Plaintiff to be the sole beneficiary of his TSP benefits. The only issue is whether Decedent submitted the form to the TSP record keeper, as instructed by the TSP-3 Form and as required by law. Since Plaintiff's allegation is completely irrelevant to the issue of whether the Form was properly submitted, it is immaterial to the matter before this Court, and does not establish an issue of material fact.

Plaintiff's second assertion is that he has some information that "Ruby Powell in the Office of Personal [sic] Management received a form from [Decedent] before his death." (Pl.'s Resp. at 5.) Plaintiff does not substantiate this allegation at all, and provides no affidavit from Powell. Furthermore, Plaintiff does not even allege that he has any information whatsoever that the form in question was the TSP-3 form.

However, this is all irrelevant to the question at hand. None of this establishes an issue of material fact as to whether Decedent submitted the TSP-3 form *to the TSP record keeper.* The TSP-3 form itself is quite clear on this, noting in boldface type at the very top of the first page of the form, "[d]o not give your completed Form TSP-3 to your employing agency. In order for your form to be valid, this form must be received by the TSP record keeper." The Form explicitly gives the address to which the form "must" be mailed, and states again on the second page, "[t]o name beneficiaries to receive your civilian TSP account after you die, you must complete this form, and *it must be received by the TSP (not your agency)* on or before the date of your death." The Court cannot see how the form could have possibly been any clearer about the requirement that the form be mailed to the TSP record keeper.

■ As discussed before, submitting the form to the TSP record keeper, and only the TSP record keeper, is also clearly required by federal statute. Section 8424(d) requires a change in beneficiary form be submitted to the appropriate office (in this case, the TSP record keeper). As previously noted, 5 C.F.R. § 1651.3 explicitly provides that "[t]o designate a beneficiary of a TSP account, a participant must complete and file a TSP designation of beneficiary form with the TSP record keeper." It is clear from reviewing the statutes and regulations in this area, then, that both Congress and FRTIB's executive director have created a regime where anything short of strict compliance with the statutory and regulatory requirement of submitting Form TSP-3 to the TSP record keeper is insufficient to designate or change a beneficiary. This requirement serves both to increase efficiency by establishing one single set of procedures for FRTIB employees to be intimately familiar with, and also to reduce the likelihood of the sort of frauds and disputes which are common-

place in state law questions of wills and trusts. Therefore, since the law is clear that the *only* way to designate a beneficiary for one's TSP benefits was to mail or fax Form TSP–3 to the TSP record keeper, and Plaintiff has made no allegation that Decedent did so, Plaintiff has failed to establish an issue of material fact on his claim, and Defendant FRTIB's Motion for Summary Judgment is hereby granted.

## II. Plaintiff's Claim against MetLife

The Court next turns to Plaintiff's claim against MetLife. Plaintiff's claim against MetLife is virtually identical to his claim against FRTIB. Plaintiff asserts that Decedent intended to make Plaintiff the sole beneficiary of his federal life insurance benefits, and that Decedent completed, signed, and had two disinterested witnesses attest to the form required to designate Plaintiff as the beneficiary. Plaintiff therefore claims he is entitled to Decedent's federal life insurance benefits, and that MetLife should not have disbursed those benefits in equal shares to Decedent's three children.

MetLife entered into a contract with the federal government to provide a group life insurance policy pursuant to the Federal Employee Group Life Insurance Act ("FEGLIA"). 5 U.S.C. § 8701, *et seq.* FEGLIA governs the life insurance policies given to federal employees. Decedent, as an employee of the United States Army, was eligible for and received a federal group life insurance policy. Upon Decedent's death, his policy benefits, in the amount of $213,000, became due. The only designation of beneficiary form on file with MetLife was dated January 7, 2000, and named Helen Ann Woolum, Decedent's wife who had predeceased him, as the beneficiary. Since Mrs. Woolum had already passed away, MetLife disbursed Decedent's life insurance benefits to his three children in accordance with the procedure set forth in 5 U.S.C. § 8705(a).

Plaintiff's claims against Defendant MetLife are identical to his claims against Defendant FRTIB—he claims that this court does not have jurisdiction over this matter due to the probate exception to federal jurisdiction, that Decedent filled out the appropriate form to designate Plaintiff as the beneficiary for his life insurance benefits, and that that form constituted a valid holographic will. For the same reasons these claims were insufficient to establish a cause of action as to Plaintiff's claims against FRTIB, they also fail as a matter of law against MetLife.

In a 1960 case out of the United States District Court for the Northern District of California, the court considered extrinsic evidence on the issue of identifying the intended beneficiary of the decedent's federal life insurance benefits, and ultimately decided based on equitable considerations that a plaintiff was the legal beneficiary even though the decedent never properly filled out and submitted the required forms to name him beneficiary, instead naming the beneficiary of said benefits in his will. *Austin v. Sears,* 180 F.Supp. 485 (N.D.Cal.1960). Congress acted in response to this decision, and in 1966 explicitly amended FEGLIA to require strict compliance with the procedural requirements of the Act. The Amended Act provided:

> [T]he amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid ... *to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office.* ... For this purpose, *a designation, change, or cancellation of beneficiary in a will or other document not so executed has no force or effect.*

5 U.S.C. § 8705(a) (emphasis added). The legislative history also demonstrates that

Congress clearly intended that the only way in which an employee could select or change the beneficiary of his or her federal life insurance benefits was to properly fill out the form and submit it to the employing office:

> The equities in *Sears* may have prompted the court of appeals to disregard the civil service regulation and the general intent of the statute in order to comply with the insured's wishes, but the precedent established in that case could, if generally followed, result in administrative difficulties for the Civil Service Commission and the insurance companies and, more important, seriously delay paying insurance benefits to survivors of Federal employees.

> To clarify Congress' intent, H.R. 432 rewrites section 4 to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary *unless the designation has been properly received in the employing office* or by the Civil Service Commission.

S.Rep. No. 1064, 89th Cong.2d Sess. 2, U.S.Code Cong. & Adm. News 2070, 2071 (1966) (emphasis added). The Fourth Circuit has explicitly written that "FEGLIA preempts state law on the process for electing insurance coverage offered by FEGLIA ..." *Grooms v. OPM,* 154 F.3d 181, 185 (4th Cir.1998). A number of other federal courts have also held that strict compliance with the procedures laid out in FEGLIA is the only way in which a federal employee may designate or change the beneficiary or beneficiaries of his or her life insurance coverage. *See, e.g., Hightower v. Kirksey,* 157 F.3d 528 (7th Cir. 1998); *Metropolitan Life Ins. Co. v. Manning,* 568 F.2d 922, 926 (2d Cir.1977); *Ward v. Stratton,* 988 F.2d 65, 67 (8th Cir.1993) ("Congress intended to establish, for reasons of administrative convenience, an inflexible rule that a beneficiary must be named strictly in accordance with the statute, irrespective of the equities in a particular case.") (internal quotes omitted); *O'Neal v. Gonzalez,* 839 F.2d 1437 (11th Cir.1988).

■ Accordingly, the Court holds that FEGLIA completely preempts any state law which would otherwise govern the procedure for changing the beneficiary of one's life insurance benefits, and therefore Plaintiff's claims that this Court lacks jurisdiction due to the probate exception and that the form completed by Decedent constitutes a holographic will fail as a matter of law. Furthermore, the Court once again notes that Plaintiff's probate exception claim fails because Plaintiff himself failed to bring this case in probate court, and because a question like this is not the exclusive jurisdiction of state probate court.

The final question the Court must address, then, is the question of whether or not Plaintiff has established an issue of material fact as to whether or not Decedent complied with FEGLIA's procedural requirements. Plaintiff's factual allegations in his claim against MetLife are substantially identical to those allegations made in his claim against FRTIB. Plaintiff alleges that Decedent filled out, signed, and had witnessed by two disinterested parties the appropriate Designation of Beneficiary Form. Plaintiff also alleges that Decedent may have submitted the form to the Office of Personnel Management. However, for the same reasons Plaintiff's allegations were insufficient to establish an issue of material fact as to his claim against FRTIB, they are also insufficient to establish an issue of material fact in his claim against MetLife.

■ As discussed above, 5 U.S.C. § 8705(a) is unequivocal about the fact that the only valid way in which a covered employee can designate or change the beneficiary of his or her life insurance benefits is by filling out and signing the appropri-

ate form, and submitting it with the signatures of two impartial witnesses to the employing office, in this case the Department of the Army.[3] Since it is quite clear from both the text of the statute itself and the legislative history that this is the only valid method for designating a beneficiary for federal life insurance benefits, the only way Plaintiff can recover on his claim against MetLife is if he establishes an issue of material fact as to whether or not Decedent filled out the Designation of Beneficiary form, signed it, had it witnessed by two disinterested parties, and submitted to the Department of the Army before he died.

However, Plaintiff has made no such allegation, and his claim against MetLife therefore fails as a matter of law. Even taking all of Plaintiff's allegations as true, as this Court must, the fact that Decedent did everything except submit the required document is still insufficient to establish Plaintiff's beneficiary status under FEGLIA. This is also true of Plaintiff's speculative assertion that Decedent may have mailed the form into the Office of Personnel Management—even if Decedent in fact did so, this is insufficient to designate or change a beneficiary under 5 U.S.C. § 8705(a), and therefore insufficient to establish Plaintiff as Decedent's beneficiary.

Accordingly, Plaintiff has failed to establish an issue of material fact as to whether or not Decedent submitted his Designation of Beneficiary form in accordance with § 8705(a)'s requirements, and Plaintiff's

claim against Metlife therefore fails as a matter of law.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Federal Retirement Thrift Investment Board's Motion for Summary Judgment be **GRANTED.** It is further **ORDERED** that, for the foregoing reasons, Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**

---

**3.** The statute does also say that if the insured has life insurance benefits due to severe illness or disability as provided by subchapter 1 of chapter 81, as provided by 5 U.S.C. § 8706(b), they may validly designate or change a beneficiary or beneficiaries by submitting the form before their death to the Office of Personnel Management. However, Plaintiff has made no allegations that Decedent was eligible for federal life insurance benefits due to illness or disability, and in fact

has specifically alleged that Decedent was eligible for such benefits as an employee of the Army, and that Decedent was employed in the Army up until the time of his passing away in 2007. Accordingly, that provision of the statute is inapplicable to the facts of the present case, and even if Decedent did submit his Designation of Beneficiary form to the Office of Personnel Management, it had no legal effect and does not effect this Court's disposition of the present matter.